RIORDAN & HORGAN
Dennis P. Riordan (State Bar No. 69320)
dennis@riordan-horgan.com
Donald M. Horgan (State Bar No. 121547)
don@riordan-horgan.com
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Specially appearing for Defendants
Javier Sanchez and Gregory Casorso

Erik Babcock (State Bar No. 172517)
Erik@babcocklawoffice.com
717 Washington St., 2nd Floor
Oakland, CA 94607
Telephone: (510) 452-8400

Attorney for Defendant
Gregory Casorso

GORDON LAW OFFICE
Dustin Gordon (State Bar No. 205216)
Dustingordonlaw@aol.com
601 Carolina Street
Vallejo, CA 94590
Telephone: (707) 563-1472

Attorney for Defendant
Javier Sanchez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-cr-0580-PJH |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY TO MOTION FOR RELEASE ON BAIL PENDING APPEAL** |
| MICHAEL MARR, *et al.* | |
| Defendants. | |

## INTRODUCTION

Now before the Court is the question of whether defendants Javier Sanchez and Gregory Casorso, who have been sentenced to 21 and 18 month terms in prison, are entitled to an order releasing them from incarceration pending resolution of their appeals from their convictions for bid-rigging. In opposing those motions, the government says this:

> For purposes of this opposition, the government does not contest whether defendants pose a danger to the community, present a flight risk, or whether the appeal is for the purpose of delay. At issue is whether defendants have raised "a substantial question of law or fact likely to result in reversal" or "an order for a new trial." *Id.*

(Opposition at 2.)

The government is correct that, given its concessions as to lack of flight risk, danger to the community, and purpose of delay, the one issue before that remains for the Court to decide is whether the defendants will raise a substantial issue of fact or law on appeal. But the implications of the government's concessions bear brief comment.

Because there is no risk of flight, danger to the community, or unwarranted delay during the pendency of the defendant's appeal, no interest of the government will be prejudiced by their release pending that appeal. Should the government prevail in the Circuit, these defendants will remain available to the Court and will dutifully report to serve their sentences. Indeed, they have or will have paid their fines and financial assessments by the time this motion is heard, so the government will not even be denied the possession of those funds during the pendency of their appeal.

On the other hand, given the common practice of the Ninth Circuit, their appeal will take at least 18 months, and possibly longer, to be finally resolved. If the defendants are denied release pending appeal, they will have served all, or nearly all, of their terms of incarceration before the Court of Appeals determines whether the convictions underlying those sentences are valid. Denying release will by that very act effectively deprive these two defendants of the chief benefit an appeal affords: the opportunity to preserve their liberty.

That opportunity should not be taken from these defendants unless this Court can say with firm confidence that the appeals they will present to the Ninth Circuit will fail to present "fairly

debatable" questions of law.  *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985).  In deciding that question, this Court should consider "'whether there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail.'" *Handy*, 761 F.2d at 1281 (quoting *Herzog* v. *United States*, 75 S. Ct. 349, 351 (1955)).  When those factors are taken into account, the Court can be wholly confident that the defendant's appellate issues are indeed substantial.

## ARGUMENT

The government seeks to win the day by framing the defendant's appellate issues in a manner that misstates their content and thus obscures their significance.  The government asserts:

> Defendants' motion rests on a single legal question: whether the *per se* rule, which applies to bid rigging, is an evidentiary presumption. That question has been answered by the courts, including the Ninth Circuit, which have unanimously concluded that the *per se* rule is a substantive rule of law.

(Opp. at 1.)

In fact, the three questions that the defendants will present on appeal are:

I. Whether "Unreasonable Restraint' Is a Necessary Element of a Criminal Violation of the Sherman Act.

II. If So, Can a Defendant, Consistent with the Due Process Clause, Be Convicted of a Sherman Act Violation Without This Necessary Element Being Found by The Jury?

III. Does "Controlling Precedent" Bar the Ninth Circuit From Deciding Questions I and II?

All three of these issues are subject to fair debate.

**I.     That "Unreasonable Restraint' Is a Necessary Element of a Criminal Violation of the Sherman Act Is Certainly "Fairly Debateable."**

As the defendants' motion pointed out, the government charged "unreasonable restraint" as an element in its indictment of the defendants, and asked the Court to take an admission of that element in every plea from the many defendants who admitted guilt in related bid-rigging cases. The government now advances a diametrically opposed position on whether "unreasonable restraint" is

1  an element of a criminal Sherman Act offense. The government could have a fair debate over the
2  question with itself.

3  Over a century ago, the Supreme Court declared that Section 1 of what was then the Anti-
4  trust Act, now the Sherman Act, does not prohibit all combinations in restraint of trade, but only
5  those which result in an *unreasonable* such constraint. *United States v. Standard Oil Co*., 221 U.S.1
6  (1911).  It said the same many decades later. "The Sherman Act does not require competitive
7  bidding; it prohibits unreasonable restraints on competition." *Nat'l Soc. of Prof. Engineers v. United
8  States*, 435 U.S. 679, 694-95 (1978) (footnote omitted).  The high court has never expressly held that
9  "unreasonable restraint" is not a necessary element of a criminal violation of the Sherman Act.  On
10 this basis alone the defendants' claim is this regard is certainly substantial. *See also In re McNulty*,
11 597 F.3d 344, 351 (6th Cir. 2010) (stating that a criminal charge under Section has "two essential
12 elements: (1) That defendants entered into a contract, combination or conspiracy; and (2) That such
13 contract, combination or conspiracy amounted to an unreasonable restraint of trade or commerce");

14 At an initial level, the dispute between the parties is a question of statutory interpretation.
15 Quoting circuit case law from the 1970s, the government says that the Sherman Act must be
16 interpreted "as if [it] read: 'An agreement among competitors to rig bids is illegal.'" Govt. Opp. at
17 6.  It is true that, if Congress had written a statute with that text, the due process argument raised by
18 the defendants would dissolve.  In that hypothetical world, a jury would simply be instructed on a
19 definition of bid-rigging, and then if the jury found that the defendant had agreed to engage in that
20 conduct, the defendant would be guilty.

21 But that is not what Sherman Act says—and questions of statutory interpretation cannot be
22 settled with "as-ifs."  If a lawyer walked into court and argued that the recently enacted tax law
23 should be interpreted *as if* it took effect at the beginning of 2017, she would be laughed out of
24 court.  The government does not even attempt to ground its arguments in any ordinary principles of
25 statutory interpretation.  Instead, it relies on case law from the mid-twentieth century.  But all of
26 that case law has either been overruled or thoroughly undermined.

27
28

The prevailing understanding of antitrust law in the 1970s was that there were two kinds of antitrust cases: per se and rule of reason. It was against that backdrop that the Ninth Circuit held, in 1972, that unreasonableness is not an element of the former offense. *United States v. Manufacturers' Ass'n*, 462 F.2d 49 (9th Cir. 1972).[1]

But since the 1970s, the Supreme Court has rejected that dichotomous framework. It has recognized that there are simply not two types of antitrust cases, but rather antitrust cases fall on a spectrum. *California Dental Ass'n. v. FTC*, 526 U.S. 756, 771, 779-80 (1999); *see California ex rel. Harris v. Safeway*, 651 F.3d 1118, 1135-37 (9th Cir. 2011); *MLB v. Salvino, Inc.*, 542 F.3d 290, 315-18 (2d Cir. 2008). And the Supreme Court has clarified that labels like "per se" and "rule of reason" and "quick look" are not hard-and-fast legal categories, but rather heuristics that help judges analyze cases as the common law of antitrust develops over time.

> Our analysis of this case under the Rule of Reason, of course, does not change the ultimate focus of our inquiry. Both per se rules and the Rule of Reason are employed "to form a judgment about the competitive significance of the restraint." [*Nat'l Soc. of Engineers*, 435 U.S. at 692.] A conclusion that a restraint of trade is unreasonable may be
>
> based either (1) on the nature or character of the contracts, or (2) on surrounding circumstances giving rise to the inference or presumption that they were intended to restrain trade and enhance prices. Under either branch of the test, the inquiry is confined to a consideration of impact on competitive conditions.
>
> *Id.* at 690. Per se rules are invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct. But whether the ultimate finding is the product of a presumption or actual market analysis, the essential inquiry remains the same—whether or not the challenged restraint enhances competition.

*NCAA v. Univ. of Oklahoma*, 468 U.S. 85, 103-04 (1984).

---

[1] The government strangely denies that its arguments compel a conclusion that there are two different offenses. But even the government concedes that *some* Sherman Act violations have unreasonableness as an element of the offense. And if rule of reasons offenses and per se offenses have different essential elements, then they are two separate crimes. That is in fact the very definition of a "different offense." *See Blockburger v. United States*, 284 U.S. 299 (1932).

1    The essential inquiry in all antitrust cases is the same. Procompetitive restraints on trade are legal but anticompetitive restraints on trade are not. In other words, reasonable restraints on trade are legal but unreasonable restraints on trade are not. A defendant's conduct cannot be deemed illegal simply by placing it into a certain category. Rather, "[w]hat is required is an enquiry meet for the case, looking to a restraint's circumstances, details, and logic." *California Dental*, 526 U.S. at 758.

Moreover, part of the reason that the Supreme Court rejected the dichotomous and categorical approach was that that approach left too much to characterization. In nearly every antitrust case, of course the plaintiff tries to characterize the defendant's conduct as a per se violation. For example, in *National Society of Prof. Engineers*, the United States characterized the case as a case of bid rigging, which was properly subject to per se treatment. In *NCAA*, the plaintiffs characterized the NCAA's conduct as price-fixing, which was properly subject to per se treatment. In *Safeway*, the plaintiffs "characterized" the defendant's conduct "as (1) a profit-pooling agreement and (2) a market-allocation agreement," and they "urge[d] that prior judicial experience with these categories of restraints requires per se condemnation." 651 F.3d at 1135.

In each of these cases, however, the courts rejected those characterizations. More fundamentally, the courts recognized that the characterization itself was question-begging. Not everything that can be described as a "market-allocation agreement" is illegal, and not everything that can be described as "bid-rigging" is illegal. These labels only re-frame and often obscure the underlying question. In the end, what is required is some analysis of the circumstances, details, and logic of the defendant's conduct. What is required, in other words, is some analysis of reasonableness. In some cases, that analysis will be easy, and in some cases, that analysis will require a great deal more work. But the essential inquiry remains the same.

The government argues that it gets to apply the label of "bid rigging," and once it does, it automatically earns the right to "per se treatment," which means the conduct is automatically illegal without regard to reasonableness or any sort of analysis of pro-competitive versus anti-competitive


5    REPLY TO MOTION FOR RELEASE ON
     BAIL PENDING APPEAL
     Case No.: 14-cr-0580-PJH

effects. That is not how antitrust law works, and in criminal cases, it is not consistent with the requirements of the Fifth and Sixth Amendments.

## II. Under the Due Process Clause, Every Element of an Criminal Offense Must Be Submitted to, and Decided by, the Jury

While the government argues that "unreasonable restraint" is not an element of a criminal violation of the Sherman Act, and thus the Due Process Clause does not require its submission to the jury, it makes no attempt to dispute that *if* such restraint were an element of a Section One offense, due process would require a jury to decide whether that element had been proven beyond a reasonable doubt. *See, e.g, Carella v. California*, 491 U.S. 263 (1989). (The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense.) [2] Because the government simply contends that "defendants' due process arguments have nothing to do with the question at hand (Opp. at 6), defendants need not further argue that their due process claim is substantial.

## III. Because Issues I and II Are More Than Substantial., the Government's Claim that These Claims Are Barred By "Controlling Law" is Subject to Substantial Challenge

The government claims that the defendants' arguments cannot be substantial because the Ninth Circuit rejected a due process challenge to the per se rule in 1972 in *United States v. Manufacturers' Association of the Relocatable Building Industry*, 462 F.2d 49, 50 (9th Cir. 1972).

To begin, the *Manufacturers'* opinion by a three judge panel is at most binding on another panel; the Ninth Circuit sitting *en banc* owes it no deference, nor, of course, does the Supreme Court. If the complex questions and interesting issues raised here are worthy of *en banc* or Supreme Court

---

[2] *See also* defendants' motion at 8-9, citing *Mullaney v. Wilbur*, 421 U.S., 684 (1975), *United States v. Gaudin*, 515 U.S. 506 (1995), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004).

review, and the defendants submit they are, *Manufacturers'* is no obstacle to a finding of substantiality.

Furthermore, *Manufacturers'* preceded by years, and in some instances by decades, the high court's decisions in *Sandstrom, Carella, Gaudin*, and *Apprendi*. As an en banc panel of the Ninth Circuit held in *Miller v. Gammie*, 335 F.3d 889 (9th Cir.2003) (en banc), "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Id*. at 893; accord, *Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015).

Thus, if the claims raised by the defendants would be considered substantial based on intervening Supreme Court law, and they should be, it is at least fairly debatable whether even a three judge panel need follow *Manufacturers'*.

## CONCLUSION

The substantial question test has been met, and therefore release pending appeal should be granted.

Dated: December 29, 2017                                    Respectfully submitted,

ERIK G. BABCOCK
*/s/ Erik G. Babcock*
Erik G. Babcock
Attorney for Defendant Gregory Casorso

DUSTIN GORDON
GORDON LAW OFFICE
*/s/ Dustin Gordon*
Dustin Gordon
Attorney for Javier Sanchez

DENNIS P. RIORDAN
DONALD M. HORGAN
RIORDAN & HORGAN
*/s/ Dennis P. Riordan*
Dennis P. Riordan
Appearing Specially for Defendants
Sanchez and Casorso

7        REPLY TO MOTION FOR RELEASE ON
         BAIL PENDING APPEAL
         Case No.: 14-cr-0580-PJH